**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.: 20-cv-60056**

VIRGINIA ALDANA ALASTRA,

       Plaintiff,

v.

BCA FINANCIAL SERVICES, INC.,
SOUTH BROWARD HOSPITAL DISTRICT
d/b/a MEMORIAL HEALTHCARE SYSTEM,

       Defendants.
_____/

**DEFENDANT SOUTH BROWARD HOSPITAL DISTRICT**
**D/B/A MEMORIAL HEALTHCARE SYSTEM'S**
**REPLY**
**AS TO MOTION FOR SUMMARY JUDGMENT**

       Comes Now, Defendant SOUTH BROWARD HOSPITAL DISTRICT d/b/a MEMORIAL HEALTHCARE SYSTEM ("Memorial"), through undersigned counsel, pursuant to Fed. R. Civ. P. 56, files this Reply to the Response filed, October 26, 2020, by Plaintiff. Memorial states in reply:

       1.    <u>Florida Consumer Collection Practices Act (FCCPA).</u>  No argument was provided by Plaintiff in opposition to recognizing that Sovereign Immunity applies to the state law -- FCCPA claim (Count 1)[1]. As a pendant state law claim, this court must apply the substantive law of the State of Florida in deciding the application of Sovereign Immunity. The court is not to use the 11th Amendment analysis which is applicable to the TCPA claim and is further discussed and replied to below.

---

[1] The Response starts off stating that it is focused on the denial of the MSJ as to Sovereign Immunity under the TCPA. (Pages 1-2 DOC. 67.) Defendant is not able to locate any Response addressed to the FCCPA.

There is no court decision (Federal or State) that addresses the issue of Sovereign Immunity for the FCCPA; so this is a question of first impression.  Under Florida substantive law, it would be recognized as follows: (a) Just like Federal law discussed below, Florida law recognizes the "modern presumption" that the use of the word "person" in a statute, excludes the government unless stated otherwise. See, *Williams v. Sch. Bd. of Palm Beach Cty,* 770 So. 2d 706, 707 (Fla. 4th DCA, 2000), and (2) that waiver of Sovereign Immunity in Florida, "cannot be found by inference or implication, and statutes waiving sovereign immunity must be strictly construed." See, *Fla. Dep't of Transp. v. Schwefringhaus*, 188 So. 3d 840, 846 (Fla. 2016).  In both instances, this court should readily find that under Florida substantive law there has not been a waiver of Sovereign Immunity as to the FCCPA by the Florida Legislature.  And under Florida substantive law, Memorial is considered a governmental entity entitled to Sovereign Immunity.  See, *Lee v. South Broward Hosp. Dist*., 473 So. 2d 1322 (Fla 4th DCA, 1985); see also, *LaRiviere v. S. Broward Hosp. Dist*., 889 So. 2d 972, 974 (4th DCA, 2004); see also, *Villa Maria Nursing & Rehab. Ctr., Inc. v. S. Broward Hosp. Dist.*, 8 So. 3d 1167, 1172 (Fla. 4th DCA, 2009)(Memorial recognized as a governmental sovereign in connection with a subrogation claim.)   Therefore, Memorial is entitled to absolute Sovereign Immunity from suit.

  2. <u>Telephone Consumer Protection Act (TCPA)</u>.  There are two primary areas of legal inquiry when this Court examines the applicability of Sovereign Immunity to a State created entity. The first area of inquiry is to examine the statute and determine if it contains any indications or statement of waiver of Sovereign Immunity.   The Response does not address this prong of the analysis at all.

  The second area of inquiry is whether Memorial can be considered "an arm of the state." The Response does address this area of inquiry and recognizes that over the course of the

development of this juris prudence a four factor test has developed to determine if a state created entity should be deemed "an arm of the state."

        a.      <u>How Florida Law Defines Defendant? / Memorial is explicitly regarded as municipality by the State of Florida.</u>  This criteria is an examination of how does the State of Florida defines Memorial for purposes of whether it considers Memorial "an arm of the state" or as is currently described by courts --- a <u>state agent</u> or <u>state instrumentality</u>. See, *Shands Teaching Hosp. and Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1311 (11th Cir.2000)(Acknowledged as Abrogated on other grounds *Lake v. Skelton*, 840 F.3d 1334, 1337 (11th Cir. 2016); see *Farrell v. Woodham*, No. 2:01-CV-417-FTM29DNF, 2002 WL 32107645, at *2 (M.D. Fla. May 29, 2002).  This analysis is to be conducted primarily with reference to Florida law.  See, *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S. Ct. 568, 572, 50 L. Ed. 2d 471 (1977)   As Defendant acknowledged in the Motion for Summary Judgment – "if it is a county or municipality under Florida law, then 11th Amendment immunity would not apply to it since it would not be considered a state instrumentality."  (Motion for Summary Judgment ECF No. 45, page 9)

Plaintiff's primary argument relies on a statement that; "In fact, the state explicitly provides that Defendant shall be treated as a municipality.  See Sections 189.403(1) and (3), Florida Statutes."  Defendant has tried to locate any current statutes with such citation.  Defendant was not able to.[2]

Actually this typo is quite instructive and quite illustrative of the position of Florida law on the subject.  Defendant would acknowledge that the definition of "special district" as contained

---

[2] Defendant did try by email with Plaintiff as to whether this was a typo.  Plaintiff indicated that she stands by those cites.

in Chapter 189, Florida Statutes, did for a period of time contain the language indicated by Plaintiff. However, under Florida Law this situation has dramatically changed.

First, this statutory definition section has been moved from section 189.403 to section 189.012, Florida Statutes. See, Chapter 2014-22, Florida Statutes. So section 189.403, Florida Statutes is now numbered 189.012, Florida Statutes.

Second, this Legislative renumbering in 2014, also contains a very substantive amendment to the definition of "special district". Besides renumbering the definition to 189.012(6) (formerly 189.403(1), it deletes the language which is support for Plaintiff's argument. The following is the amendatory text from Chapter 2014-22, Florida Statutes:

> (6)(1) "Special district" means a ~~local~~ unit of local government created for a ~~of~~ special purpose, as opposed to a general purpose ~~general purpose~~, which has jurisdiction to operate ~~government~~ within a limited geographic boundary and is, created by general law, special act, local ordinance, or by rule of the Governor and Cabinet. ~~The special purpose or purposes of special districts are implemented by specialized functions and related prescribed powers.~~ ==For the purpose of s. 196.199(1), special districts shall be treated as municipalities.== The term does not include a school district, a community college district, a special improvement district created pursuant to s. 285.17, a municipal service taxing or benefit unit as specified in s. 125.01, or a board which provides electrical service and which is a political subdivision of a municipality or is part of a municipality. FL LEGIS 2014-22, 2014 Fla. Sess. Law Serv. Ch. 2014-22 (C.S.C.S.C.S.S.B. 1632) (WEST) (highlight added)

"Where the legislature amends a statute and in so doing omits a portion of it, common sense dictates that the legislature intended to remove that portion of the statute from the law." *Bacon v. Marden*, 518 So. 2d 925, 926 (3rd DCA, 1987); *Gunite Works, Inc. v. Lovett*, 392 So.2d 910 (Fla. 1st DCA 1980). Clearly, the legislature intended to not have the definition of special district include any concept or acknowledgment that a special district is comparable to or considered a municipality.

4

The other argument in Reply to this definitional argument of Plaintiff --is to examine the definition of "person" contained in the TCPA.  Plaintiff's argument concedes that Memorial is a governmental entity of some label.  Whether it is deemed a municipality or not is immaterial as to whether sovereign immunity has been waived at all by the US Congress <u>for any governmental entity.</u>  It has become well settled that the TPCA does not apply to the Federal Government or any of its contracted vendors.  *Barr v. Am. Ass'n of Political Consultants, Inc,* 140 S. Ct. 2335 fn. 1, 2344, 207 L. Ed. 2d 784 (2020)   The legal logic which justifies this recognition of Federal Sovereign Immunity, relies upon reviewing the definition of "person", i.e. 47 USC §153(39).  Then applying what has been characterized as a "modern presumption " --- that the word "person" *excludes* the government unless stated otherwise.  *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Broadnet Teleservices LLC Nat'l Employment Network Ass'n Rti Int'l*, 31 F.C.C. Rcd. 7394 (2016)

The issue of whether this "modern presumption" naturally should include any governmental entity, including local government entities, does not seem decided at the Federal appellate level.  In Florida, there is a decision in the Federal Middle District which finds:

> Conspicuously absent from this definition of "person" is any mention of governmental entities, let alone a phrase that may reasonably be construed as encapsulating a sovereign. Accordingly, the Court is led to the inevitable conclusion that governmental entities fall outside the ambit of the TCPA's cause of action.
> *Lambert v. Seminole Cty. Sch. Bd.,* No. 6:15-CV-78-ORL-18DAB, 2016 WL 9453806, at *3 (M.D. Fla. Jan. 21, 2016)

A similar finding by this Court, would comport with the "modern presumption" and what Florida Law would find in its courts. *Williams v. Sch. Bd. of Palm Beach Cty,* 770 So. 2d 706, 707 (Fla. 4th DCA, 2000)

b. <u>The Degree of Florida's Control over Defendant? / Memorial is financially independent, supports itself with revenues generated through its commercial financial-services activities, is statutorily vested with and in fact exercises control over its commercially generated revenues.</u>

This criteria is not negative to Memorial at all as Plaintiff suggests. The fact that an entity which is a state instrumentality makes profit does not alter its public character. *Fouche v. Jekyll Island-State Park Auth.,* 713 F.2d 1518, 1521 (11th Cir. 1983)  For example, the *Fouche* Court recognized that the state instrumentality, Park authority, at issue in that proceeding, "supports itself through the operation of a golf course, hotels, restaurants, and other park facilities." Id.  In addition, the *Fouche* Court recognized that the Park Authority's efforts and activities were geographically limited and concentrated on Jekyll Island State Park.  *Id.*

The *Fouche* Court also dealt with the issue of issuance of bonds issue raised by Plaintiff. The *Fouche* Court recognized the facts that: (1) the Park Authority may independently issue bonds and (2) there may be no liability for those bonds issued by the Park Authority's parent – State of Georgia, does not impede a finding in favor of Sovereign Immunity's application.  *Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d at 1521.

Lastly, Plaintiff's argument in this area fails to recognize the reality of a hospital authority as state instrumentalities.  Hospital Authorities are organized and created by States to build and operate the physical plant, acquire the human capital and organize all under a professional management structure as a health care system.  The public purpose they are promoting for their respective states is the delivery of healthcare, including commercial, governmental and indigent care.  Under Florida law in section 189.012(5), Florida Statutes, it is specifically recognized that "health system and facilities" are "public facilities" which special districts could provide.  The *Fouche* court had little trouble recognizing that hospital authorities, similarly

organized and operated, as Memorial could be entitled to Sovereign Immunity. See, *Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d at 1522 *citing Medical Center Hospital Authority v. Andrews,* 250 Ga. 424, 297 S.E.2d 28 (Ga.1982). Contrary to Plaintiff's suggestion, there really should be no question that Memorial, as a special taxing district uses all of its funds to support the distinct State governmental mission and public purpose of providing a healthcare system, facilities, services and programs as a safety-net hospital to residents of the State of Florida.

     c. <u>Where are Defendant's Funds Are Derived? / Receipt of funds from Medicaid, Medicare, DSH or LIP programs does not constitute state funding.</u>

Plaintiff's argument is essentially a request to acknowledge that receipt of Medicare, Medicaid, DSH and LIP funds should be treated no differently than the receipt of funding from private sources. (Response Page 5-6 ECF No. 67) Plaintiff misses the point of Memorial's argument on this factor. Memorial acknowledges that it derives significant revenue from private sources. Memorial cited to the *Thornquest v. King*, 626 F.Supp. 486, 491-492 (M.D. 1985) and *Souto v. Fla. Int'l Univ. Found, Inc.*, 446 F.Supp.3d 983, 994 (S.D. Fla. 2020) for the proposition that the entity can derive the majority of revenue (and perhaps all) from sources other than governmental programs and still satisfy this criteria.

The *Thornquest* and *Souto* courts recognized that as long as the instrumentality utilizes all its sources of revenue to support the public purpose of its State parent then this factor can be determined in favor of the instrumentality entity. The *Thornquest* Court stated the fact that while community colleges serve "a distinctly local function," it is recognized that they also serve important statewide postsecondary educational functions. Id at 491-492. Both *Thornquest* and *Souto* recognize that the construction, organization and operation of the underlying capital, human and professional management resources to bring forth the "system", e.g. hospital, college, deep

water port, airport authority, etc., is itself a sufficient State public purpose. The fact that significant private revenues are used to create these public goods and systems is not an impediment to finding that they are State instrumentalities.

<u>d. Whether or not Memorial's use of private funds as charity care is considered significant enough to qualify it as an arm of the state is a genuine issue of fact that has to be proven.</u>

Plaintiff wants to make an issue of the amount of charity care that Memorial is providing. She acknowledges that Memorial has expended in Fiscal Year, 2019-2020, $199,991,000 in charity care. (ECF 66, Pg. 3, ¶ 6.) Plaintiff raises essentially three arguments under this section.

First, she objects to the Financial Statements (ECF No. 44-2) on evidentiary grounds. The financial statement prepared by Memorial is a public record. A record that Memorial is required to prepare and post on line pursuant to law. See, §§ 112.63, 218.32, and 189.016(9), Fla. Stat. As a public entity, these financial statements are public records Memorial is under a legal duty to report. Therefore, the financial statements (ECF No. 44-2) are considered admissible evidence as public records under Federal Rule of Evidence 803(8).

Second, Plaintiff wants to contest the significance of the amount of charity and indigent care supplied in relation to the entire $2 Billion of revenue generated by Memorial. This is just argument. Having testimony is not going to change the numbers. This Court can make the legal determination based on these undisputed facts.

Lastly, the Plaintiff then cites as to how Memorial is factually distinct from the entity under scrutiny in the *Souto* case. The Plaintiff tries to assert that these factual distinctions do not entitle Memorial to the same recognition of private funds revenue generation that the *Souto* entity was entitled to. That is the point of the four factor test developed for this question. The range of configurations of governmental entities presented to the federal courts for sovereign immunity

recognition -- is a wide range of structures. As part of the revenue analysis factor, the fact a governmental entity presented to the court derives a substantial part, if not all, its revenue from private sources does not prohibit a favorable finding. See, *Souto, supra, Fouche, supra.*

      e.      Judgment in favor of Plaintiff would not be paid from state funds.

Plaintiff's argument on this factor demonstrates the de minus nature of it in this analysis. She acknowledges that the damages for the claim involved in this proceeding could not exceed $9,500. Assuming attorney's fees do not exceed that amount, certainly well under the Florida Statute 768.28 sovereign immunity waiver of the first $200,000[3]. Yes, Memorial will certainly pay any judgement or settlement from this proceeding out of current funds. Federal District, Senior Judge Moreno when reviewing this factor in connection with a favorable decision to recognize sovereign immunity as to a TPCA claim for the Oklahoma Student Loan Authority reasoned as follows:

> In a similar case, the Eleventh Circuit held that a self-supporting entity qualifies as an arm of the state where **"a judgment would be paid out of current funds."** *Fouche,* 713 F.2d at 1521
>
> Abellard v. Oklahoma Student Loan Auth., No. 17-62064-CIV, 2018 WL 654462, at *3 (S.D. Fla. Jan. 29, 2018), appeal dismissed, No. 18-10920-C, 2018 WL 3017409 (11th Cir. May 11, 2018)(emphasis supplied)

IN CONCLUSION, Memorial is an instrumentality of the State of Florida. Its public purpose is to create the sophisticated infrastructure of a modern healthcare system. Memorial is created by the Florida Legislature and the Florida Governor has full appointment and removal power over the Memorial Board. There is no question that Memorial is a governmental entity and would be entitled to Sovereign Immunity in the courts in the State of Florida.

---

[3] Although Memorial is not conceding that a TPCA claim, is one brought in tort to which the waiver would apply.

For the FCCPA claim, Plaintiff made no responsive argument. The FCCPA is examined under the Florida State court's application of Florida law. Not the 11th Amendment rubric which is used for the Federal statute, i.e. TCPA. Under Florida law, the FCCPA does not include governmental entities with in the definition of "person." Also, there is no other "clear and unmistakable" indication of waiver of Sovereign Immunity elsewhere in the FCCPA.

As to the TCPA, Plaintiff has conceded there is no explicit waiver of Sovereign Immunity in the act itself. There is also little need to engage in much more analysis for this claim then a review of the definition of "person" applicable to the TCPA. As an undisputed governmental entity (regardless of label), Memorial is not a person subject to the TPCA.

In addition, Plaintiff challenges Memorial's "arm of the state" or "state instrumentality" status. Memorial is nothing if but a creature of its parents the Florida Legislature and Florida Governor. Those are the governing authorities which decide "the continuing existence or dissolution of a district, the appropriate future role and focus of a district, . . ." See, 189.068(1), Fla. Stat. A significant public service and pubic purpose is being served by Memorial at the State's behest. Under the law of the State of Florida, i.e. Chapter 189, Florida Statutes, Memorial as an independent special taxing district is subject to oversight and accountability by only its parents the Florida Legislature and Governor.

WHEREFORE, Memorial hereby request that the Court enter summary judgment granting the Motion against Plaintiff as to all counts of the Complaint.

Date: November 2, 2020

Respectfully submitted,

South Broward Hospital District d/b/a
Memorial Healthcare System

_/s/ Frank P. Rainer_____
Frank P. Rainer
Florida Bar No.: 436518
frainer@mhs.net
3111 Stirling Road
Hollywood, FL 33312
Phone: (954) 265-5933
Facsimile: (954) 276-0487

*Counsel for Defendant Memorial Healthcare System*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served this 2nd day of November, 2020 upon all parties on the attached service list via e-mail transmission.

_/s/ Frank P. Rainer_____
Frank P. Rainer

## SERVICE LIST

Jessica L. Kerr, Esq.
The Advocacy Group
200 S.E. 6th Street, Ste. 504
Fort Lauderdale, FL 33301
service@dvocacypa.com
Attorney for Plaintiff